UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| REBECCA STEED, | CASE NO. 4:11CV204 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Plaintiff, Rebecca Steed seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1.  For the following reasons, the decision of the Commissioner is affirmed.

## I.   PROCEDURAL AND FACTUAL HISTORY

On February 4, 2008, Plaintiff filed her applications for benefits alleging disability beginning May 2, 2005.  ECF Dkt. #12 at 172-177.[1]  The SSA denied Plaintiff's applications initially and on reconsideration.  *Id.* at 98-101.  On June 17, 2008, Plaintiff filed a request for an administrative hearing.  *Id.* at 122.  On September 9, 2009, an ALJ conducted an administrative hearing where Plaintiff and vocational expert, George J. Starosta ("VE") offered testimony.  *Id.* at 64-97.  On October 1, 2009, the ALJ issued a Decision denying benefits.  *Id.* at 102-114.  Plaintiff filed a request for review, which the Appeals Council denied.  *Id.* at 55-57.

On January 28, 2011, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  On September 28, 2011, Plaintiff filed a brief on the merits.  ECF Dkt. #19.  On

---

[1] Page numbers refer to "Page ID" numbers in the electronic filing system.

December 15, 2011 Defendant filed a brief on the merits. ECF Dkt. #22. A reply brief was filed on January 5, 2012. ECF Dkt. #24.

**II.**     **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from immune thrombocytopenic purpura ("ITP") and depression, which qualified as severe impairments under 20 C.F.R. 404.1520(c) and 416.920(c), through her date last insured, March 31, 2010 ("DLI"). *Id.* at 107. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.1525, 416.1526). *Id.*

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.1567(b), except she must be able to alternate between sitting and standing every 30 minutes throughout the workday; she is limited to simple and routine work; she is limited to work with little stress or pressure; defined as routine work with little change in the workplace; she can have no interactions with the public, and only occasional interactions with coworkers. *Id.* at 109. Although the ALJ found that Plaintiff could not perform her past relevant work, he concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and, therefore, Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits. *Id.* at 113-14.

**III.**     **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* An SSI claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long

as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.    ANALYSIS

In this appeal, Plaintiff contends that the AJL erred in failing to include her obesity, diabetes, chronic pain/chronic back pain, and severe anxiety as severe impairments at step two of the analysis. Next, Plaintiff argues that the ALJ erred in finding that her testimony was not credible. Finally, Plaintiff contends that the hypothetical question posed by the ALJ did not accurately portray Plaintiff's mental impairments based upon the ALJ's conclusion that Plaintiff is moderately limited with respect to concentration, pace and persistence.[2]

Turning to Plaintiff's first argument, at step two, a claimant must show that he or she suffers from a severe medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not considered severe when it "does not significantly limit [one's] physical or mental ability to do basic work activities." §404.1521(a). The Regulations define basic work activities as being the " 'abilities and aptitudes necessary to do most jobs,' and include: (1) physical functions; (2) the capacity to see, hear and speak; (3) '[u]nderstanding, carrying out, and remembering simple instructions;' (4) '[u]se of judgment;' (5) '[r]esponding appropriately to supervision, co-workers, and usual work situations;' and (6) '[d]ealing with change in a routine work

---

[2]It is important to note that Plaintiff does not challenge the weight given to the various medical opinions offered in this case. The ALJ gave little weight to the residual functional capacity assessment and medical statement completed by Plaintiff's primary care physician, Mary Pavlica, D.O., ECF Dkt. #12 at 425-428, 446-447, because her conclusions were contradicted by Plaintiff's own testimony as well as medical evidence in the record. *Id.* at 112. With respect to Plaintiff's mental residual capacity, the ALJ credited the opinion of consultative examiner, J. Joseph Konieczny, Ph.D. and state agency reviewing physician, Alice Chambly, Psy.D. *Id.*

setting.'" *Simpson v. Comm'r Soc. Sec.*, 344 Fed. Appx. 181, 190 (6th Cir. Aug.27, 2009) (quoting 20 C.F.R. §§ 404.1521(a)-(b) and 416.921(a)-(b)).

At step two, the term "significantly" is liberally construed in favor of the claimant. The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. §404.1520a(d). The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out "totally groundless claims." *Farris v. Sec'y of HHS*, 773 F.2d 85, 89 (6th Cir.1985). The Sixth Circuit has construed the step two severity regulation as a " *de minimis* hurdle" in the disability determination process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988). Under a Social Security policy ruling, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as "severe." SSR 96-3p (July 2, 1996).

Once the ALJ determines that a claimant suffers a severe impairment at step two, the analysis proceeds to step three; any failure to identify other impairments, or combinations of impairments, as severe in step two is harmless error. *Maziars v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987). However, all of a claimant's impairments, severe and not severe, must be considered at every subsequent step of the sequential evaluation process. See C.F.R. §404.1529(d); C.F.R. §§ 416.920(d). Consequently, the ALJ's determination that Plaintiff's obesity, diabetes, chronic pain/chronic back pain, and severe anxiety were not severe impairments do not constitute error at step two.

In her second argument, Plaintiff contends that the ALJ failed to appropriately assess her credibility. An ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir.1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir.2001) , quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir.1972). The court "may not disturb" an ALJ's credibility

-5-

determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001). The threshold for overturning an ALJ's credibility determination on appeal is considerable, such that, in recent years, the Sixth Circuit has expressed in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08–4706, 2010 WL 4810212 at *3 (6th Cir. Nov.18, 2010), citing *Heston v. Comm'r of Soc. Sec.*, *supra*, and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact." *Sullenger v. Commissioner of Social Security*, No. 07–5161, 2007 WL 4201273 at *7 (6th Cir. Nov.28, 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir.2007).

Furthermore, the social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p,

61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir.1993). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Plaintiff was 37 years old on the date of the hearing. ECF Dkt. #12 at 68. She is 5'2" and weighed 272 pounds. Plaintiff testified that her normal weight is between 160-165 pounds, but that she gained approximately 100 pounds as a result of steroid treatment for her ITP. ITP is a bleeding disorder in which the immune system destroys platelets, which are necessary for normal blood clotting. Persons with the disease have too few platelets in the blood. When Plaintiff was first diagnosed with ITP in July of 2003, her platelet count[3] did not warrant treatment. *Id.* at 350-351. Ferndinando Cortese, MD, an oncologist, wrote that "[b]ecause of the absence of bleeding and the absence of any evidence on physical examination of any cutaneous bleeding, I shall not give her any medication at the present time." *Id.* at 332. He further noted that he would "keep a very close eye on her and consider treatment as soon as she develops either symptoms or her platelet count falls to a more dangerous level." *Id.* In April of 2005, Dr .Cortese determined that her platelet count was too low so he began prescribing steroids.

Plaintiff discontinued her steroid treatment against doctors' orders repeatedly during the relevant time period because she did not like the side effects. *Id.* at 335. For instance, at the hearing, Plaintiff testified that, due to the weight gain and high level mood swings, she stopped steroid treatment approximately nine months prior to the hearing. *Id.* at 75-76.

---

[3]Plaintiff's white count was 8.2, her hemoglobin 13.8, and her platelet count was 30,000. ECF Dkt. #12 at 331.

As an alternative to continuous steroid treatment, Dr. Cortese and Antoine E. Chahine, M.D., a hemotologist from whom Plaintiff sought a second opinion, both recommended a splenectomy, which Dr .Cortese characterized as the "classic treatment" for ITP. *Id.* at 322, 336, 401-402. However, Plaintiff refused to undergo the surgery based upon her own independent research. She testified at the hearing that patients who undergo splenectomies have "a whole other slew of problems" and require immunizations due to a difficulty fighting off infections. *Id.* at 77-78. She further testified, "Say if the statistics showed even 50/50 over the course of your life, but to know in five years there is only a 25 percent success rate and that now doctor are saying that – you know, that – I read the platelet news. You know, that's something that they don't recommend to have done." *Id.* at 79. She contended that hemotologists "don't keep up with the newest research that's done on [ITP] because it's so rare." *Id.*

Due to Plaintiff's refusal to have the surgery, Dr. Cortese felt that ongoing steroid treatment was her only option, although he conceded that long-term steroid use was not recommended. *Id.* at 336. However, Dr. Cortese expressed grave concern that, without a splenectomy on continuous steroid treatment, "a catastrophe [could] occur[ ]." *Id.* at 336. At the hearing, Plaintiff explained that she preferred to undergo steroid treatment as a "quick fix" when her platelet level fell below 10. *Id.* at 76. Plaintiff testified at the hearing that driving "makes [her] nervous" because of Dr. Cortese's warning about an accident becoming catastrophic if she is not taking steroids, so she only drives one or two times a week. *Id.* at 69. The ALJ noted that she drove sixty miles to the hearing. *Id.* at 71.

Plaintiff has a two-year accounting degree, but was laid off from her last job on May 5, 2005, her onset date, because she was forgetful and missing work, and the company was in financial trouble. *Id.* at 73. Plaintiff collected unemployment following the lay-off, which the ALJ recognized was at odds with her disability applications. *Id.* at 74. Plaintiff contends that she cannot work because she experiences heavy bleeding and swelling in her feet during her menstrual cycles, which last up to ten days, and chronic diarrhea. She must use the bathroom every 45 minutes during her menstrual cycle. She has "accidents" even at home. *Id.* According to Plaintiff's testimony at

the hearing, she cannot take anti-diarrheal medication because constipation can cause internal bleeding. *Id.* at 89. These problems limit her ability to leave the house.

Plaintiff further testified that she has become diabetic as a result of long-term steroid use. *Id.* at 81. Plaintiff testified that she has taken Vicodin for one year to address severe back pain that she suffers "all the time." *Id.* at 82-83. Plaintiff further testified that her Vicodin use is within her physician's limits, however, if she exceeds those limits, treating physician/general practitioner, Mary Pavlica, D.O. has recommended that she contract for pain management. Plaintiff's ITP prevents her from using NSAIDS. *Id.* at 346.

Plaintiff testified that she suffers from depression and has suicidal thoughts and crying spells everyday, and oftentimes does not want to get out of bed. *Id.* at 89-91. She testified that she would not commit suicide, because it would devastate her son. *Id.* at 90. Plaintiff sought a psychiatric assessment at Canfield Counseling in July of 2009. The treatment notes recommended admission to St. Joseph's Hospital, but Plaintiff refused to go due to her responsibilities to her son and her father, who was gravely ill at the time. *Id.* at 88, 440. Plaintiff testified that the effects of her depression include forgetfulness, for instance, she sometimes forgets her son's appointments and her own appointments. *Id.* at 84-85. Plaintiff further testified that she cannot concentrate well, and often goes to retrieve something but then forgets the item she is trying to find. *Id.* at 90. She had been taking anti-depressant medication for approximately two years prior to the hearing. *Id.* at 89. She testified that Dr. Pavlica, prescribed Prozac, which "helps some days." *Id.* at 88.

In a typical day, Plaintiff gets her son ready for school, watches television, naps, prepares dinner and helps her son with his homework in the evening. *Id.* at 84-85. Her husband is laid off, so he shops for her, otherwise her mother would shop for her. *Id.* at 86.

Although the ALJ recognized that Plaintiff's refusal to undergo surgery could not be considered for the purposes of his disability determination[4], he nonetheless found that Plaintiff had

---

[4] The ALJ appears to question Plaintiff's motivation for refusing to undergo a splenectomy since the medical records reveal her continuing interest in gastric bypass surgery. See ECF Dkt. #12 at 110. However, it is clear from her testimony at the hearing that she rejected the surgery based upon questions regarding its efficacy rather than any fear of surgery in general. Moreover, Plaintiff, in her brief, characterized her refusal to under a splenectomy as "a persistent, overarching terror." ECF Dkt. #9 at 476. This, too, appears to be a

-9-

demonstrated a pattern of non-compliance with the recommended treatment for her ITP and depression. *Id.* at 335. He cited several missed appointments with Dr. Cortese, as well as Plaintiff's refusal to submit to continuous steroid treatment despite Dr. Cortese's warning about a potential calamity. With respect to her depression, the ALJ acknowledged that, contrary to the alleged severity of Plaintiff's depression, she never underwent any therapy even though a counselor at Canfield Counseling recommended weekly counseling sessions. *Id.* at 440.

Dr. Cortese's notes indicated that Plaintiff responded well to treatment for ITP, which in addition to steroids, included immunoglobulins and Win-Rho[5], which Dr. Cortese considered a good short-term correction due to the cost. *Id.* at 321-22, 336. Despite Plaintiff's refusal to maintain continuous steroid treatment as directed, the ALJ also recognized that Plaintiff never suffered any excessive bleeding, easy bruisability, hemoptysis, hematesis, hematochezia or melena. *Id.* at 391, 346, 335-336. In June of 2009, Plaintiff's medical records indicate that she was taking acai berry, in lieu of steroids, and that her platelet count was 29, which was a good count for her. *Id.* at 439.

Plaintiff argues that her heavy menstrual bleeding, diarrhea, back pain/chronic back pain, and anxiety prevent her from working. However, in her medical records, she informed Dr. Pavlica that her cycles were regular in May of 2005, shortly after reporting heavy bleeding to Dr. Cortese on April 25, 2005. *Id.* at 277, 346. She also reported regular cycles to Dr. Cortese in February of 2008, *Id.* at 321, and July of 2008. *Id.* at 336. Consequently, Plaintiff's statements at the hearing are directly contradicted by her medical records. Furthermore, there is no indication in any of the medical records that Plaintiff sought treatment for heavy menstrual flow. Likewise, Plaintiff does not cite to any medical records regarding complaints or treatment for chronic diarrhea, and the undersigned found no treatment records from Dr. Cortese or Dr. Pavlica for said ailment. With respect to Plaintiff's fear of driving, based upon Dr. Cortese's warning regarding a catastrophe while

---

mischaracterization of Plaintiff's concerns, based upon her articulation of those concerns at the hearing.

[5]Dr. Chahine suggested that Plaintiff undergo a trial of IVIG (intravenous immunoglobulin) or WinRho SD to improve her platelet count acutely in anticipation of a potential splenectomy. *Id.* at 402.

she is not taking steroids, the ALJ pointed out that Plaintiff broke up a fight at her New Years' Eve party, and was thrown to the ground and injured her shoulder. *Id.* at 265.

Regarding her back pain, the ALJ recognized that there are no tests documenting the source of Plaintiff's back pain. Contrary to her onset date of May 5, 2005, Plaintiff first complained about back pain in the "kidney area" in March of 2007, which Plaintiff self-diagnosed as a kidney stone or bladder infection. *Id.* at 394. Dr. Pavlica ordered no tests to check for a kidney stone or bladder infection, but, instead, prescribed Darvocet and Flexiril. *Id.* at 394-395. At an appointment in December of 2007, Plaintiff complained of ongoing back pain, which was not alleviated by Darvocet or Flexiril. Dr. Pavlica made no diagnosis as to the source of Plaintiff's pain, but prescribed Vicodin and Soma. *Id.* at 395. Plaintiff discontinued daily use of Soma because it did not provide any relief, but continued taking Vicodin. *Id.* at 386. In February of 2008, Plaintiff indicated that she had increased her dosage of Vicodin to two times a day, although she had previously taken only one at bedtime. *Id.* at 386. Again, no explanation is provided regarding the source of Plaintiff's back pain. No tests are ordered and no physical therapy is recommended. Plaintiff did not report any back pain at her appointments with Dr. Pavlica in 2009, however, she did inform Dr. Pavlica that she took between ten and twelve Vicodin for pain during her menstrual cycle. Based upon Plaintiff's Vicodin usage, Dr. Pavlica recommended a pain contract and a pain management program. *Id.* at 439.

Plaintiff contends that the ALJ erred in refusing to credit her testimony about her physical problems. Because there is contrary evidence in the record regarding Plaintiff's alleged bleeding problem, and a lack of any evidence to support Plaintiff's testimony regarding her diarrhea and back pain/chronic pain, the ALJ did not err in rejecting her testimony regarding her physical problems at the hearing.

Plaintiff's depression was first diagnosed by Dr. Pavlica in December of 2008. *Id.* at 380. Plaintiff attended an appointment in tears that day because her husband had been laid off from his job. Dr. Pavlica diagnosed depression, anxiety, and mood disorder and prescribed Lexapro. *Id.* Plaintiff stopped taking Lexapro because it was not helping, and Dr. Pavlica prescribed Prozac at Plaintiff's February 18, 2009 appointment. *Id.* at 265. Dr. Pavlica's medical notes from Plaintiff's appointment in June of 2009 do not mention any ongoing problems associated with depression. As

-11-

stated earlier, Plaintiff sought an assessment from Canfield Counseling in July of 2009, but never followed through on the recommended weekly sessions or consultation . Based upon the limited evidence in the record, and the fact that the ALJ included moderate difficulties with social functioning and concentration, persistence, and pace in Plaintiff's RFC, the ALJ did not err in rejecting Plaintiff's testimony regarding the extreme nature of her mental problems.

The foregoing analysis applies with equal force to Plaintiff contention that the ALJ failed to properly consider her obesity, diabetes, back pain/chronic pain and anxiety at each step of the analysis. In *Young v. Comm'r of Soc. Sec.*, 2011 WL 2182869, *7 (N.D.Ohio), the court explained it is "up to the claimant to furnish medical and other evidence which the 'Social Security Administration can use to reach conclusions about [a claimant's] medical impairment and its effect on [his] ability to work on a sustained basis.' " *Id.* (quoting 20 C.F.R. § 404.1512(a)). Plaintiff argues that her diabetes is the result of her steroid treatments, and her inability to take NSAIDs limits her ability to treat her chronic pain. While it is true that her problems are interrelated, Plaintiff has failed to show that these problems have increased the severity of her limitations. See *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir.2011); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir.2009).

Finally, Plaintiff objects to the ALJ's reliance on Plaintiff vacationing in Las Vegas in May of 2006, ECF Dkt. #12 at 274, hosting a New Years' Eve party in January of 2009, *Id.* at 265, attending her son's various sporting events as evidence that Plaintiff's physical and mental limitations are not as severe as she alleges. Based upon the deference accorded to the ALJ in determining Plaintiff's credibility, the undersigned does not assign any error to the ALJ's reliance upon these activities for rejecting Plaintiff's allegations regarding the severity of her physical and mental limitations.

Because the evidence in the record does not support Plaintiff's testimony regarding the severity of her medical problems or the limitations created by those problems, the ALJ did not err in rejecting the testimony at the hearing. Similarly, the ALJ did not err in not considering Plaintiff's diarrhea, back pain/chronic pain, and anxiety, based upon a lack of supporting evidence in the record. Accordingly, Plaintiff's second argument does not have merit.

In her third argument, Plaintiff cites a body of case law supporting the proposition that hypotheticals limiting claimants to jobs entailing no more than simple, routine, and unskilled work are not adequate to convey moderate limitations in ability to concentrate, persist, and keep pace. See *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 517 (citing to *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930–31 (E.D.Mich.2005) which held that hypothetical limiting claimant to "jobs entailing no more than simple, routine, unskilled work" not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace; also citing to *Whack v. Astrue*, 2008 WL 509210, at *8 (E.D.Pa.2008), which provides a list of cases that support the proposition that hypothetical restrictions of "simple" or "low-stress" work do not sufficiently incorporate the claimant's medically established limitations where claimant has moderate deficiencies in concentration, persistence or pace). In this case, the ALJ concluded that Plaintiff had a moderate limitation in concentration, persistence, and pace. ECF Dkt. #12 at 108. He posed the following hypothetical, "a person of [Plaintiff's] age, education and the work experience you have described and this hypothetical question would limit a person to light work as that's defined in the regulations, the work would be simple and routine in nature, there would be little changes in the workplace, there would be no interaction with the public and occasional interaction with co-workers. . . ." *Id.* at 93.

The ALJ in *Ealy* credited the opinion of a treating physician that limited the claimant's ability to sustain attention to complete simple repetitive tasks to two-hour segments over an eight-hour day where speed was not critical. *Ealy,* 594 F.3d at 516. The Sixth Circuit wrote that the ALJ's hypothetical limiting the claimant to simple, repetitive tasks and instructions in a non-public work setting "omitted these speed and pace-based restrictions completely." Id. Of course, the same type of limitations are not present in the case *sub judice.*

Here, Dr. Konieczny opined that "[Plaintiff's] ability to concentrate and to attend to tasks show no indication of impairment. Her ability to understand and to follow directions showed no indication of impairment. Her ability to withstand stress and pressure shows indications of moderate impairment and would appear to reflect her depression. ECF Dkt. #12 at 290. Consequently, the ALJ in this case limited Plaintiff to simple, routine tasks based upon her moderate limitation in

-13-

handling stress, not due to any speed or pace-based restriction. Consequently, the facts in *Ealy* are distinguishable from the facts in the case in this case. Accordingly, Plaintiff's final argument is not well taken.

## VI.     CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED and Plaintiff's Complaint is dismissed in its entirety with prejudice.

DATE: March 30, 2012

                                        */s/George J. Limbert*
                                        GEORGE J. LIMBERT
                                        UNITED STATES MAGISTRATE JUDGE